**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FRANKIE T.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 26 CV 00411<br><br>Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Frankie T. appeals the Commissioner of Social Security's decision denying her application for benefits. For the following reasons, plaintiff's motion to reverse the Commissioner's decision [18][1] is granted, the Commissioner's motion for summary judgment [22] is denied, and the case is remanded for further administrative proceedings.[2]

## Background

In June 2022, plaintiff applied for a period of Title II disability and disability insurance benefits, alleging an onset date of June 14, 2021. [12-1] 16. The claims were denied initially, on reconsideration, and after a hearing before an administrative law judge. [*Id.*] 16, 25. The Appeals Council denied review in November 2025, [*Id.*] 1–3, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff has appealed to this Court, and the Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[3]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date.

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record, [12-1], which refer to the page numbers in the bottom right corner of each page.

[2] Plaintiff requested that, in the alternative, benefits be awarded by this Court and the case be "reversed and remanded solely for the calculation and payment of benefits[.]" [18] 15. But an award of benefits is only proper when "all factual issues have been resolved and the record supports a finding of disability." *Israel v. Colvin*, 840 F.3d 432, 442 (7th Cir. 2016). Plaintiff has provided no argument as to how those circumstances are met in this case. [18].

[3] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge [8].

[12-1] 18. At step two, the ALJ determined that plaintiff has the following severe impairments: "bilateral acromioclavicular (AC) joint osteoarthritis; rheumatoid arthritis and status post right total knee arthroplasty" [*Id.*] 19. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 19. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform sedentary work except that she: (1) could occasionally climb ramps and stairs; (2) never climb ladders, ropes or scaffolds and must avoid unprotected heights; (3) could frequently stoop, kneel, crouch and crawl; (4) could frequently reach in all directions bilaterally; (5) could frequently handle and occasionally finger bilaterally; and (6) must avoid extreme cold and concentrated exposure to irritants and chemicals. [*Id.*] 19–23. At step four, the ALJ held that plaintiff could not perform her past relevant work. [*Id.*] 23–24. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: appointment clerk (71,000 jobs) and control clerk (34,000 jobs). [*Id.*] 24–25. Accordingly, the ALJ ruled that plaintiff was not disabled for the relevant time period.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

Plaintiff argues that the denial of benefits should be reversed because the ALJ erred at step three by providing an impermissibly perfunctory analysis of listing 14.09 and the ALJ failed to properly analyze Dr. Rafiq's exam findings. [18] 7–15. After a review of the record, the Court finds that the ALJ's step-three analysis was not supported by substantial evidence and, as such, remand is warranted.

The ALJ's analysis in the section of her opinion dedicated to the third step of the five-step evaluation process consists of only one paragraph:

> Although the claimant has "severe" impairments, they do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix I). In reaching this

> conclusion, the undersigned considered all of the listings found in 20 CFR Part 404, Subpart P, Appendix 1, paying particular attention to listings 1.17, 1.18 and 14.09. The medical evidence does not document listing-level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination. This conclusion is supported by the opinions of the state agency medical consultants, who reviewed the record and came to the same conclusions (Ex. 1A; 3A; 5A).

[12-1] 19.

Plaintiff argues that this analysis is exactly the type of perfunctory analysis the Seventh Circuit has held impermissible. [18] 10–11; *see Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) ("In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing."); *see also Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020). Further, plaintiff points out that while the ALJ claims that the state agency medical consultants "came to the same conclusions[,]" the consultants only recorded that they considered listing 1.18 ("Abnormality of a Major Joint(s) in Any Extremity"), not 1.17 nor 14.09.[4] [18] 11; [12-1] 64, 72, 78.

The Commissioner argues that the ALJ's analysis was not impermissibly perfunctory because–if the Court reads the opinion as a whole, rather than just the analysis in the listing section–the ALJ's decision "clearly demonstrates why she determined that plaintiff's impairments were not severe enough to meet a listing." [22] 4.

The Court agrees with the Commissioner that an ALJ's opinion should be read as a whole, and a court should review "an ALJ's step-three determination in light of elaboration and analysis appearing elsewhere in the decision." *Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021). As the Seventh Circuit has explained:

> When an ALJ explains how the evidence reveals a claimant's functional capacity, that discussion may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing. And, as we've already recognized, to require the ALJ to repeat such a discussion throughout the decision would be redundant.

*Jeske*, 955 F.3d at 590 (citation modified). However, even when considering the ALJ's discussion outside of her step-three analysis, the Court still finds itself unable to

[4] The Commissioner argues that, because listing 1.18 has some overlapping criteria with listing 14.09, "the prior administrative medical findings did provide some additional support for the ALJ's listing analysis." [22] 5–6. Those findings may provide some support, but not enough to alter this Court's conclusion that the ALJ's listing analysis was not supported by substantial evidence.

follow her reasoning. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015) ("The ALJ has a duty to fully develop the record before drawing any conclusions and must adequately articulate her analysis so that we can follow her reasoning.").

While the ALJ identified three listings she rejected, plaintiff only objects to the ALJ's determination that she does not meet listing 14.09. [18] 7–13. Plaintiff contends that she met the listing requirements of 14.09(A) because: (1) as the ALJ found, she has rheumatoid arthritis;[5] (2) persistent issues with her right knee were extensively documented; and (3) she requires the use of a walker. [18] 8–10; [22] 4.

The Commissioner rebuts plaintiff's argument by claiming that plaintiff's right knee issues were not relevant for an analysis of listing 14.09A and that the ALJ reasonably determined that plaintiff's alleged need for a walker was exaggerated. Regarding plaintiff's knee, the Commissioner states that plaintiff's "reliance on her right knee surgery as evidence that listing 14.09 was met is misguided because plaintiff required surgery due to degenerative joint disease [osteoarthritis] rather than inflammatory arthritis."[6] [22] 5. The Commissioner cites no legal authority or SSA regulation for this argument. [*Id.*]. And in the regulations, it is written that listing 14.09 is met when claimants have "[i]nflammatory arthritis[,] [a]s described in 14.00D6[,] [*w*]*ith*: . . . [p]ersistent inflammation or persistent deformity[.]" 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 14.09(A) (emphasis added). However, the Court also acknowledges that section 14.00D6(e), which describes how the SSA "evaluate[s] inflammatory arthritis under the listings[,]" does explain that "[l]isting-level severity in 14.09A . . . is shown by the presence of an *impairment-related* physical limitation of functioning." *Id.* at § 1400D6(e) (emphasis added). Regardless of whether plaintiff's osteoarthritis-necessitated knee replacement can be considered when determining if she has a "persistent deformity" for purposes of an inflammatory arthritis listing, the Court finds that the ALJ has not met her burden here. First, the ALJ included no discussion of why–or even if–plaintiff had a persistent deformity for purposes of listing 14.09. Further, plaintiff has identified record evidence showing that her right knee also suffered from persistent inflammation. [18] 9 ("Plaintiff continued to experience ongoing symptoms from that joint through the DLI [Date Last Insured]. . . . Plaintiff's rheumatology and infusion records consistently documented reports of joint pain in the knee[.]"). And because the ALJ never explained if she determined that plaintiff's knee suffered from persistent inflammation or deformity–neither in the section dedicated to the listing analysis nor the rest of the opinion–the Court is unable to trace the path of the ALJ's reasoning. *Sherise K. v. Dudek*, No. 24 C 11199,

---

[5] *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (§14.00D6(c) states "inflammatory arthritis involving peripheral joints may be associated with disorders such . . . [r]heumatoid arthritis").

[6] "[D]egenerative joint disease is also known in the medical community as osteoarthritis[.]" *Bodfield v. Comm'r of Soc. Sec.*, No. 2:18-CV-536, 2019 WL 1146357, at *13 (S.D. Ohio Mar. 13, 2019), *report and recommendation adopted*, No. 2:18-CV-536, 2019 WL 1427935 (S.D. Ohio Mar. 29, 2019). *See also* [12-1] 23 ("The claimant's residual functional capacity accounted for her osteoarthritis of the right knee status knee replacement surgery.").

2025 WL 1260831, at *2 (N.D. Ill. Apr. 30, 2025). Perhaps the ALJ found that plaintiff's knee replacement did not qualify as a persistent deformity for listing 14.09A because it was necessitated by osteoarthritis rather than rheumatoid arthritis. Perhaps the ALJ did not find plaintiff's rheumatoid arthritis inflammation to be persistent. Or maybe the ALJ did find that the plaintiff has a persistent deformity or inflammation but did not meet the requirements for listing 14.09A for other reasons, such as not having a documented medical need for a walker. But by not articulating anything, the Court is left without the ability to review the ALJ's decision for substantial evidence. The Court cannot consider the Commissioner's post hoc argument that plaintiff's knee replacement does not qualify as a persistent deformity, nor the Commissioner's implicit argument that the ALJ did not find that plaintiff suffered from persistent inflammation, if it was not articulated by the ALJ. *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011).

On plaintiff's alleged need for a walker, the Commissioner argues that "regardless of which impairment plaintiff alleges caused her to require use of a walker, plaintiff fails to establish that she required use of a walker for the requisite 12 months." [22] 5. In her decision, the ALJ acknowledged plaintiff's testimony that she used a walker "consistently" since her knee replacement surgery in 2021.[7] [12-1] 23, 51. However, the ALJ concluded that medical evidence did not support that alleged limitation:

> [T]he medical record indicates that the claimant did not seek or receive any treatment in connection with her right knee through her date last insured after her discharge from the admission for her right knee replacement on November 17, 2021. In addition, while the claimant did continue to report joint pain in several areas when she followed up for her Cimizia infusions in 2022, there is no indication that the claimant needed an assistive device to walk when she presented for those appointments and the exam portions of those treatment notes were consistently left blank, suggesting her exams were unremarkable despite her reports of joint pain and difficulty walking (Ex. 7F/5-10). In addition, while the claimant reported that she could not stand or walk unassisted, her presurgical exam on October 21, 2021, showed a full range of motion in all of her extremities, normal motor strength and no edema in any area (Ex. 1F/144).
>
> . . .
>
> In addition, as late as August 2023, eight months after her date last

[7] A "Rolling Walker" was listed in plaintiff's medical records from Rush as "Equipment Recommended" under the section titled "Discharge Planning[.]" [12-1] 313, 326, 334, 342, 345, 354.

> insured, her annual exam showed no deficits in her range of motion in any area, no motor strength deficits, no swelling in any area and that her gait was normal (Ex. 5F/26).
>
> . . .
>
> While the claimant testified that her ability to walk, lift, use her hands and reach overhead were significantly limited, in March 2022, May 2023 and August 2023, the claimant reported that she was the primary caregiver for her infirm[] mother, which suggests that she was not as limited as she alleged prior to her date last insured.

[*Id.*] 23.

If the Court found the ALJ's analysis here supported by substantial evidence, that may have been sufficient to justify the ALJ's earlier listing analysis. *Zellweger*, 984 F.3d at 1254. However, after reviewing the ALJ's citations in this section of her opinion, the Court is unable to find that her analysis is supported by substantial evidence.

First, the ALJ claims that plaintiff did not obtain any treatment for her right knee after 2021 and through her date last insured, but then in the next sentence discusses her Cimzia infusions in 2022. [12-1] 23. The Court admits that the medical records are handwritten and far from the model of clarity, but it appears to the Court that the Cimzia infusions were to treat plaintiff's rheumatoid arthritis symptoms, which included right knee pain. For example, one January 2022 note cited by the ALJ states both that the plaintiff is "here for Cimzia ing to treat RA" and that among plaintiff's chief complaints are "[j]oint [p]ain: ® knee, shoulders, hands[.]" [*Id.*] 570. In a December 2022 treatment note, also cited by the ALJ, one of plaintiff's chief complaints is "my legs are buckling under me[.]" [*Id.*] 566. While the December 2022 note does not technically mention plaintiff's right knee, at a minimum it serves as evidence that plaintiff still needed a walker.

Second, the Court finds problematic the ALJ's inference that the blank exam portion of these treatment notes indicate that an exam took place and was unremarkable, and not simply that an exam did not take place at all. The exam section of the treatment notes cited by the ALJ consists of a list of several areas of the body and two empty check boxes next to each identified area. [*Id.*] 566–71. One line of boxes is titled "NL" (Normal Limits) and another titled "See Note[.]" [*Id.*]. The Court assumes that if physical exams were done and the results were "unremarkable[,]" rather than being left blank, the treater would have checked the box to indicate the exam was within the normal limits. This assumption is bolstered by reviewing the December 2022 treatment note. That note was the only one cited by the ALJ in the above-quoted analysis which had any of the exam section check boxes

marked. [*Id.*] 566–71. The treater marked the NL check box for skin, ENT, neck, nodes, carotid, and lungs but left the rest of the check boxes, including one for "ext" (extremities) unfilled. [*Id.*] 566. Further, in that treatment record one of plaintiff's chief complaints was her "legs . . . buckling" and the treatment plan written into the exam section consists of trialing multiple pain relievers and anti-inflammatories. [*Id.*]. This suggests to the Court that findings regarding her extremities were likely not within normal limits. The Court is unable to follow the ALJ's reasoning from those treatment notes to her conclusion that the treater's failure to check boxes (including the extremities box) was intending to convey that the exam results were unremarkable.

Third, the Court also does not understand why the ALJ discussed treatment records from October 2021–before plaintiff's knee replacement–when determining if plaintiff needed a walker. As the ALJ stated earlier in the paragraph "the claimant testified that the pain in her right knee had forced her to use a walker or other assistive device *since* her knee replacement surgery in November 2021." [12-1] 23 (emphasis added). Treatment notes from before her reported need for a walker would seem to have little to no value in this analysis.

Fourth, the Court agrees that plaintiff's August 2023 wellness exam, documenting normal gait and "[n]o clubbing, cyanosis or edema[,]" [12-1] 502, is relevant to this analysis despite it occurring after the date last insured. However, if the ALJ is going to consider evidence after the date last insured, she cannot "cherry-pick" evidence supportive of her conclusion while ignoring evidence contrary to it. *Charlnette R. v. Dudek*, No. 23-CV-03184, 2025 WL 933840, at *5 (N.D. Ill. Mar. 27, 2025). There was another treatment note in the record from after the date last insured, a physical consultative exam for the Bureau of Disability Determination Services, which recorded that–when she was not using her assistive devices–plaintiff's gait was antalgic. [12-1] 445. Earlier in her decision[8] the ALJ acknowledged this note, but appeared to dismiss it because it was written 21 days after plaintiff's date last insured. [*Id.*] 22 ("the only exam in the record that showed any gait abnormalities or abnormalities in her upper extremities was the exam completed in connection with her disability application in January 2023, after her date last insured (Ex. 1F/144; 3F; 7F)."); *see also* [*id.*] 18, 443 (date last insured was 12/31/2022 and date of exam was 01/21/2023).

Finally, the Court does not agree that plaintiff being the primary caregiver for her mother is evidence that plaintiff does not consistently need to use a walker. [22] 4 ("The ALJ further found that plaintiff's allegation that she had significant difficulty walking was inconsistent with her ability to act as the primary caregiver for her

[8] The Court notes that within the paragraph of the ALJ's decision discussing plaintiff's alleged need for a walker, the ALJ does cite this exam, but only discusses its findings regarding plaintiff's reduced grip strength and finger swelling, not plaintiff's gait. [12-1] 23. The ALJ also appears to reject the examiner's grip strength findings because the exam was not completed prior to plaintiff's date last insured. [*Id.*].

elderly mother in 2022 and 2023.") The Court can understand that caring for an elderly mother would likely be much harder if plaintiff relies on a walker. But, in order for the Court to determine that the ALJ's decision was supported by substantial evidence, the ALJ must further explain why that fact itself is inconsistent with plaintiff's reported need for a walker.

For the reasons stated above, the Court finds that the ALJ listing analysis was not supported by substantial evidence. Even when reading the opinion as a whole, the Court finds that the ALJ failed to build the necessary "accurate and logical bridge from the evidence to her conclusion" that plaintiff did not meet listing 14.09. *Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir. 2002) (citation modified). Accordingly, the case must be remanded for further proceedings. Having found that the ALJ's listing analysis constitutes a reversible error requiring remand, the Court need not address plaintiff's remaining contentions as to how the ALJ erred.

## Conclusion

Plaintiff's motion to reverse and remand [18] is granted and defendant's motion for summary judgment [22] is denied. The decision of the Social Security Administration is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

Heather K. McShain

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: September 28, 2026**